# In the United States Court of Federal Claims

No. 18-1607T (Pro Se)
(Filed: May 14, 2019)

|  |  |  |
|---|---|---|
| ANNICE HALE, | ) | Keywords: Subject-Matter Jurisdiction; |
| | ) | Tax Refund; Offset; Illegal Exaction; |
| | ) | Presumption of Correctness; I.R.C. |
| Plaintiff, | ) | § 6511; I.R.C. § 6532; I.R.C. § 7422; |
| | ) | Statute of Limitations. |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Annice Hale*, Houston, TX, pro se.

*Katherine R. Powers*, Trial Attorney, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, DC, with whom were *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

In this tax refund case, pro se Plaintiff Annice Hale claims that she is entitled to a refund of taxes for the tax years 2012 through 2017 because the government improperly adjusted downward the refunds claimed in her returns for each of those tax years. Ms. Hale's complaint, liberally construed, also alleges civil rights and tort claims against the government in connection with these tax-related government actions. The government has moved to dismiss Ms. Hale's complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC").

As discussed below, the Court lacks subject-matter jurisdiction over Ms. Hale's civil rights and tort claims, part of her 2012 tax refund claim, and her 2014 refund claim. Moreover, Ms. Hale has failed to state a claim with respect to tax years 2013, 2015, 2016, and 2017, as well as the portion of her claim for tax year 2012 over which the Court has jurisdiction. As to these remaining claims Ms. Hale's allegations, taken as true, do not establish any claim upon which relief can be granted.

## BACKGROUND[1]

Ms. Hale's complaint alleges that her tax refunds have been improperly "adjusted starting year 2012 through current year 2017." Compl. at 4, Docket No. 1. She further states that the government has violated her "Right to a Fair and Just Tax System," "Right to Quality Tax Service," "Right to Pay no more than the Correct Amount of Tax," "Right to be Informed," and "Right to Finality." Id. According to Ms. Hale, the government has violated her civil rights by "diminishing" her credit history and causing her "financial disparity." Id.

Ms. Hale claims the following refund amounts for each tax year at issue:

| Tax Year | Refund Claimed | Adjusted Refund | Difference (Additional Refund Claimed) |
|---|---|---|---|
| 2012 | $2,975.61 | $757.69 | $2,217.92 |
| 2013 | $2,844.39 | $1,732.00 | $1,112.39 |
| 2014 | $2,938.20 | $1,668.00 | $1,270.20 |
| 2015 | $3,359.00 | $1,811.88 | $1,547.12 |
| 2016 | $4,154.00 | $2,604.30 | $1,549.70 |
| 2017 | $5,400.00 | $1,980.02 | $3,419.98 |

The government filed its motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) on February 25, 2019. Docket No. 12. The government has construed Ms. Hale's complaint as alleging claims for violation of civil rights, tortious damages, and claims for tax refunds for the tax years 2012 through 2017. It contends that the Court lacks jurisdiction over several of Ms. Hale's claims and that, as to the remaining claims, she has failed to state a claim upon which relief can be granted. The court received Ms. Hale's response to the government's motion on April 8, 2019, and received the government's reply three days earlier, as the government had already received its own copy of the response the previous month. Docket Nos. 13–14.[2] The Court agrees with the government that Ms. Hale's entire complaint must be dismissed.

---

[1] The facts set forth below are based on the allegations in Ms. Hale's complaint, as well as jurisdictional facts drawn from the government's motion to dismiss, Ms. Hale's response, and the documents attached to the parties' filings.

[2] As summarized in a previous order of the Court, it is considering Ms. Hale's response to have been timely filed despite the fact that the court did not receive its copy of the document until April 8, 2019. Order at 2, Docket No. 15. Ms. Hale first attempted to send the response to the court via FedEx on March 20, 2019, and the government received a copy the following week. Id.

## DISCUSSION

### I.   Jurisdictional Principles

#### A.   Subject-Matter Jurisdiction

Whether a court has jurisdiction to decide a case is a threshold matter, and, if no jurisdiction exists, the court must order dismissal without proceeding further. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998); RCFC 12(h)(3). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). It is well established that complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004), aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

Further, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). Thus, the Court may raise the issue of subject-matter jurisdiction sua sponte at any time, see Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008), and may "inquire into jurisdictional facts" to determine whether it has jurisdiction, Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

#### B.   The Court of Federal Claims's Jurisdiction over Tax Refund Cases

The Tucker Act grants the Court of Federal Claims jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well established that this jurisdictional grant extends to suits for the refund of taxes remitted to the Treasury. See Ont. Power Generation v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); Shore v. United States, 9 F.3d 1524, 1525 (Fed. Cir. 1993); see also 28 U.S.C. § 1346(a)(1) (granting the Court of Federal Claims concurrent jurisdiction with the district courts over civil actions "against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws").

This Court's exercise of that jurisdiction is subject, however, to several statutory and jurisprudential prerequisites. See Ishler v. United States, 115 Fed. Cl. 530, 534–36 (2014). Among these is the requirement set forth in I.R.C. § 7422(a) that the taxpayer file an administrative refund request before filing a tax refund suit. Specifically, § 7422(a) provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or

3

> collected . . . until a claim for refund or credit has been duly filed with the
> Secretary, according to the provisions of law in that regard, and the regulations of
> the Secretary established in pursuance thereof.

I.R.C. § 7422(a). Moreover, under § 6511(a), the taxpayer must file the administrative refund
request within the later of "3 years from the time the return was filed or 2 years from the time the
tax was paid." Further, "unless a claim for refund of a tax has been filed within the time limits
imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." United States v.
Dalm, 494 U.S. 596, 602 (1990).

In addition to filing a timely administrative refund request, a taxpayer wishing to file a
tax refund suit in the Court of Federal Claims must adhere to the filing restrictions set forth in
I.R.C. § 6532(a)(1). That section provides as follows:

> No suit or proceeding . . . for the recovery of any internal revenue tax, penalty, or
> other sum, shall be begun before the expiration of 6 months from the date of filing
> the claim . . . unless the Secretary renders a decision thereon within that time, nor
> after the expiration of 2 years from the date of mailing by certified mail or registered
> mail by the Secretary to the taxpayer of a notice of the disallowance of the part of
> the claim to which the suit or proceeding relates.

I.R.C. § 6532(a)(1). Thus, if the IRS disallows the taxpayer's administrative refund request, the
taxpayer must file suit within two years of the date that the IRS mailed the taxpayer the notice of
that disallowance; otherwise, the court will lack jurisdiction. Harper Int'l Corp. v. United States,
120 Fed. Cl. 66, 72–73 (2015) (dismissing case for lack of subject-matter jurisdiction where
plaintiff failed to file refund suit within two years of notice of disallowance); Ishler, 115 Fed. Cl.
at 534–35 (statute of limitations set forth in § 6532(a)(1) is a jurisdictional prerequisite); Brach v.
United States, 98 Fed. Cl. 60, 67–68 (2011) (same); see also Rosser v. United States, 9 F.3d
1519, 1523 (11th Cir. 1993) ("[T]he two-year statute of limitations laid out in 26 U.S.C.
§ 6532(a)(1) begins to run in every case on the date the IRS mails the taxpayer a notice of
disallowance, whether or not the taxpayer actually receives the notice.").

## II.    The Court's Subject-Matter Jurisdiction over Ms. Hale's Claims

### A.    Civil Rights and Tort Claims

As noted, the government has construed Ms. Hale's assertions concerning violations of
certain alleged rights as civil rights and tortious damages claims. The Court concurs with this
interpretation of Ms. Hale's references to alleged violations of her "Right to a Fair and Just Tax
System," "Right to Quality Tax Service," "Right to Pay no more than the Correct Amount of
Tax," "Right to be Informed," and "Right to Finality," as well as her allegations that the
government's actions have damaged her credit history and caused her "financial disparity."
Compl. at 4; see also Pl. Resp. Mem. ("Pl.'s Resp.") at 99, Docket No. 13.

The Court finds that it lacks subject-matter jurisdiction over these claims. The Tucker Act
serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a
substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299,
1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive

law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)); Rick's Mushroom Serv., Inc., 521 F.3d at 1343 ("[P]laintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States."). In this case, Ms. Hale has not identified any such "source of substantive law" providing relief in this court for the civil rights and tort claims set forth in her complaint. Indeed, it is well settled that the Court of Federal Claims lacks jurisdiction over tort claims. See, e.g., Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) (citing 28 U.S.C. § 1491(a)). Similarly, this Court lacks jurisdiction "to entertain claims involving race, sex, and age discrimination or other claims involving civil rights violations." Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998).

Although Ms. Hale's response reiterates her position that the Court has jurisdiction over her civil rights claims, Pl.'s Resp. at 99, she has not provided any authority or substantive argument to contradict the governing case law cited above. Thus, Ms. Hale has not invoked any source of substantive law providing the right to money damages related to the non-refund claims set forth in her complaint. The Court will therefore dismiss these claims for lack of subject-matter jurisdiction.

### B.   Refund Claim for the 2012 Tax Year

Ms. Hale's return for the 2012 tax year requested a total refund of $2,975.61. Pl.'s Resp. at 131. This was based on total self-employment tax of $1,193.39 subtracted from total credits of $3,169 for the Earned Income Credit ("EIC") and $1,000 for the American Opportunity Credit. Id. Ms. Hale's tax transcript and another line in her return reflect that her self-employment tax was actually $1,192.39, rounded down to $1,192.00. Id.; Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. 1, at App. 2, Docket No. 12. The IRS also found that Ms. Hale incorrectly calculated her EIC and reduced it from $3,169 to $3,069. Def.'s Mot. Ex. 2, at App. 4.

The foregoing adjustments translated to an expected refund of $2,877.00. Id. However, the refund was offset in the amount of $2,119.31 by the Bureau of Fiscal Service to satisfy a "past-due non-tax government agency debt [Ms. Hale] owed." Id. This left a remaining refund of $757.69, which the IRS issued to Ms. Hale on March 20, 2013. Id.

Documents submitted with Ms. Hale's response indicate that the offset was accomplished to satisfy a purported debt Ms. Hale owed to FEMA. See Pl.'s Resp. at 142, 144, 147. These records show that, in December 2012, an "unpaid delinquent debt" to FEMA was referred to the Department of the Treasury for collection. Id. at 142. The amount of the debt was listed as $2,095.40. Id. Based on this referral, and in accordance with I.R.C. § 6402(d)(1)(A), $2,119.31 of Ms. Hale's refund for tax year 2012 was withheld as an offset to repay FEMA.[3]

I.R.C. § 6402(g) states in pertinent part that "[n]o court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a

---

[3] I.R.C. § 6402(d)(1)(A) states, in pertinent part, that "[u]pon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt . . . the Secretary shall . . . reduce the amount of any overpayment payable to such person by the amount of such debt."

reduction authorized by subsection (c), (d), (e), or (f)." To the extent, therefore, that Ms. Hale is seeking review of the IRS's reduction of her tax refund to offset a debt she owed to FEMA, the Court lacks jurisdiction to consider it.

Section 6402(g) also provides, however, that it "does not preclude any legal, equitable, or administrative action against the Federal agency. . . to which the amount of such reduction was paid." Indeed, where a tax refund is offset to pay a debt to another agency, the plaintiff may have a cognizable illegal exaction claim against that agency. See Flander v. United States, 737 F. App'x 530, 532–33 (Fed. Cir. 2018) (Court of Federal Claims erred in finding it lacked jurisdiction over claim arising out of tax-refund offsets because plaintiff pled claim for illegal exaction); Greene v. United States, 124 Fed. Cl. 636, 641 (2015) ("The Court of Federal Claims possesses jurisdiction over an illegal exaction claim based on an offset pursuant to 31 U.S.C. § 3720A."); Ibrahim v. United States, 112 Fed. Cl. 333, 336 (2013) (although court lacked jurisdiction over tax refund claim, court did possess jurisdiction over a claim against agency "for illegal exaction of [the plaintiff's] tax refund by the means of an offset").

The Court is cognizant of its obligation to construe a pro se plaintiff's complaint liberally. Nonetheless, in this case, it is apparent that Ms. Hale's complaint does not state a claim for an illegal exaction against FEMA. Beside the fact that there is no mention of FEMA in the complaint, the record indicates that Ms. Hale ultimately secured repayment of the offset amount from FEMA.[4]

As to the $100 reduction in Ms. Hale's 2012 refund due to the IRS's recalculation of her EIC, the Court finds that it has subject-matter jurisdiction over that portion of Ms. Hale's 2012 tax refund claim. As set out in more detail below, an original or amended tax return reporting an overpayment functions as a claim for refund sufficient to satisfy the jurisdictional prerequisite set forth in I.R.C. § 6511(a). See 26 C.F.R. § 301.6402-3(a)(5). Ms. Hale filed a tax return and, later, two amended returns for 2012. The amended returns both qualify as timely claims for refund because they were filed within three years of the original return. I.R.C. § 6511(a); Def.'s Mot. Ex. 1, at App. 2 (reflecting amended returns filed in April and June of 2015, following original return filed on April 15, 2013). Accordingly, Ms. Hale fulfilled § 6511's requirement to file a timely administrative claim for refund or credit.

---

[4] Documents submitted with Ms. Hale's response include an April 2013 affidavit in which she described previous communications with FEMA and requested that it return the $2,119.31 that was offset from her refund. Pl.'s Resp. at 144. A November 2013 email submitted by Ms. Hale reveals that she appealed the FEMA offset decision and that her appeal was granted but that she had not yet received payment from FEMA. Id. at 147. According to the email, the representative on the phone told Ms. Hale that the agency's records reflected that she would be receiving a refund. Id. Ms. Hale states in her response to the government's motion to dismiss that she was "eventually after a long time refunded the Expedite Fund Amount for 2005 and 2006," although "IRS kept the remaining balance." Id. at 101. It is unclear what "remaining balance" Ms. Hale is referencing; unless it is the $100 reduction based on the IRS's recalculation of her EIC, which is addressed in the text above.

Further, while the IRS sent Ms. Hale at least two letters explaining the $100 reduction in her EIC, it never sent a notice of disallowance concerning her claim for that sum. Pl.'s Resp. at 40 (June 1, 2015 letter explaining mathematical error made in calculating EIC in amended 2012 return); id. at 52 (September 10, 2015 letter restating IRS's position that 2012 EIC was calculated incorrectly and had been reduced from $3,169 to $3,069). Thus, the two-year statute of limitations set forth in § 6532 was never triggered, and Ms. Hale's complaint is timely with respect to this portion of her 2012 tax refund claim.[5] The Court has subject-matter jurisdiction to adjudicate that claim.

## C.    Refund Claim for the 2014 Tax Year

The government contends that Ms. Hale's tax refund claim for the 2014 tax year is time-barred. Tax refund claims brought in this court pursuant to I.R.C. § 7422(a) are subject to a two-year statute of limitations measured "from the date of mailing . . . to the taxpayer of a notice of the disallowance of the part of the [administrative] claim to which the suit or proceeding relates." I.R.C. § 6532(a)(1). Documents submitted by the parties in this case establish that the IRS sent Ms. Hale a partial disallowance letter regarding her claim for refund on September 9, 2015, which gave her until September 9, 2017 to file any related suit. See Def.'s Mot. Ex. 9, at App. 37–38; Pl.'s Resp. at 48–51. The present lawsuit was not filed until October 11, 2018. See generally Compl. Accordingly, the Court agrees with the government that Ms. Hale's complaint was untimely with respect to her claim for a refund for the 2014 tax year. This claim must therefore be dismissed for lack of subject-matter jurisdiction.

## D.    Refund Claims for Tax Years 2013, 2015, 2016, and 2017

As to the remaining tax years covered in the complaint, the Court has determined that it has subject-matter jurisdiction to hear Ms. Hale's claims. Similar to the $100 adjustment to her 2012 EIC, Ms. Hale filed a claim for refund in the form of her tax return and, in some instances, amended tax returns for these tax years. Moreover, the documents before the Court indicate that

---

[5] The Court observes that in United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1 (2008), the Supreme Court suggested—but did not hold—that in the absence of another, more specific limitations period, tax refund cases are subject to the federal "outside limit" six-year statute of limitations provided in 28 U.S.C. § 2401(a). Id. at 8 (quoting United States v. A.S. Kreider Co., 313 U.S. 443, 447 (1941)). The Supreme Court thus implied that the Court of Claims was incorrect in its 1955 holding that the six-year general statute of limitations never applies in tax refund cases. See Detroit Trust Co. v. United States, 131 Ct. Cl. 223, 226–28 (1955) (finding that six-year statute of limitations did not bar action based in part on refund claim filed in 1917 and disallowed in 1951, where suit was filed within two years of 1951 disallowance); Wagenet v. United States, No. 08-142, 2009 WL 4895363, at *2 (C.D. Cal. Sept. 14, 2009) (applying the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) because where "no notice of disallowance was mailed . . . Section 6532(a)(1) does not apply"). Ms. Hale filed suit within six years of her claims for refund. With respect to her $100 EIC claim for tax year 2012, Ms. Hale's complaint is timely because her last amended return (in other words, her claim for refund) for 2012 was filed on June 15, 2015 and her complaint was filed on October 11, 2018. Def.'s Mot. Ex. 1, at App. 2; see generally Compl.

the IRS never sent Ms. Hale a notice of disallowance of the claims in question. Accordingly, and as explained in further detail below, the Court may properly exercise subject-matter jurisdiction over these claims.

### 1.     Ms. Hale Filed Claims for Refund

As noted above, a taxpayer must "duly file[]" a "claim for refund or credit" before bringing a tax refund claim in this court. I.R.C. § 7422(a). Here, Ms. Hale filed an income tax return for each year at issue, and for certain tax years she filed one or more amended returns. See Def.'s Mot. Ex. 3, at App. 7 (2013 tax year); id. Ex. 10, at App. 40 (2015 tax year); id. Ex. 14, at App. 61 (2016 tax year); id. Ex. 18, at App. 90 (2017 tax year). Treasury regulations provide that "[a] properly executed . . . original income tax return or an amended return . . . shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return)." 26 C.F.R. § 301.6402-3(a)(5). Thus, Ms. Hale's returns (and amended returns) for tax years 2013, 2015, 2016, and 2017 constituted claims for refund because they reflected an overpayment of taxes and requested refunds in varying amounts. See, e.g., VanCanagan v. United States, 231 F.3d 1349, 1351 (Fed. Cir. 2000) (taxpayer's return was also claim for refund); Murdock v. United States, 103 Fed. Cl. 389, 394 (2012) ("The filing of a tax return reporting overpayments constitutes a simultaneous filing of [a claim for refund]."); Simmons v. United States, 29 Fed. Cl. 136, 140 (1993) ("[R]ather than file a separate claim for refund, a taxpayer may use his tax return as the refund claim.") (citing McIlvaine v. United States, 23 Cl. Ct. 439, 442 (1991)). Because an income tax return or amended return may also serve as a claim for refund, the Court finds that Ms. Hale filed claims for refund when she filed her returns and amended returns for tax years 2013, 2015, 2016, and 2017.

Ms. Hale's claims for refund were also timely. As the Federal Circuit explained in VanCanagan, a claim for refund filed as part of a return is timely because it is "filed within three years of (actually on the same date as) the filing of the return." 231 F.3d at 1351. In addition, Ms. Hale's amended returns for the subject tax years were also filed within three years of the corresponding original returns. See Def.'s Mot. Ex. 3, at App. 7 (two amended tax returns for 2013 filed in April 2015 and July 2015, respectively, within three years of original return filed on April 15, 2014); id. Ex. 10, at App. 40 (two amended returns for 2015 filed within same calendar year as original return filed on April 15, 2016); id. Ex. 14, at App. 61 (amended return for 2016 filed on same date as original return filed April 15, 2017). For these reasons, the Court finds that Ms. Hale filed timely claims for refund for tax years 2013, 2015, 2016, and 2017.

### 2.     The IRS Did Not Send Notices of Disallowance Corresponding to Ms. Hale's Remaining Claims

Under I.R.C. § 6532(a)(1), a taxpayer must wait at least six months from the date she filed a claim for refund to bring a tax refund suit in this court. Moreover, the taxpayer's time to file suit expires two years after the IRS sends a notice of disallowance of the claim. Id.

In the present case, the documents submitted by the parties suggest that the IRS never sent Ms. Hale a notice of disallowance of her claims for tax years 2013, 2015, 2016, and 2017. In contrast, and as discussed above, the IRS sent Ms. Hale such a notice disallowing her refund

claim for tax year 2014. See Def.'s Mot. Ex. 9, at App. 37–38; Pl.'s Resp. at 48–51. As to the other tax years at issue, the IRS's correspondence with Ms. Hale took other forms. For instance, it sent Ms. Hale "math error notices" using form letter 474C for tax years 2013 and 2017, a 288C letter requesting more information for tax year 2015, and a 12C letter requesting more information for tax year 2016. See Def.'s Mot. Ex. 5, at App. 15 (letter 474C advising corrections on amended return for 2013); Pl.'s Resp. at 44 (same); Def.'s Mot. Ex. 13, at App. 56 (letter 288C asking for more information in order to process 2015 return); id. Ex. 16, at App. 81 (letter 12C requesting additional information regarding 2016 taxes); Pl.'s Resp. at 93 (letter 474C informing Ms. Hale of corrections to her 2017 return).

Although a notice of disallowance need not take any "particular form," it must adequately notify the taxpayer "of the Commissioner's adverse action" in order to trigger the two-year statute of limitations set forth in § 6532. Smith v. United States, 478 F.2d 398, 399 (5th Cir. 1973); see also Miller v. United States, 117 F.3d 1414 (Table), 1997 WL 381958, at *2 (4th Cir. 1997). Internal guidance from the IRS suggests that—among other criteria—a notice of disallowance must inform the taxpayer of her "right to file suit" and of the "period in which suit may be filed." Chief Counsel Advisory, IRS CCA 200203002 (Jan. 18, 2002). Notices informing taxpayers that the IRS needs more information to process a claim, along with math error notices or similar correspondence, typically fail to adequately notify taxpayers of a final adverse action or of their right to file suit within two years. Id.; Form of Notice of Disallowance of a Refund Claim—Refund Suits, FED. TAX COORDINATOR ¶ T-9022 (2d ed. 2019) (discussing "dual purposes" of informing taxpayer of final disallowance and of the right to sue along with applicable statute of limitations).

Here, none of the correspondence in the record pertaining to tax years 2013, 2015, 2016, and 2017 meets these criteria for effective notices of disallowance. They do not inform Ms. Hale of her right to sue or of the applicable two-year limitations period. The government does not assert that the IRS ever sent notices of disallowance with respect to these tax years. By contrast, the government (and Ms. Hale) submitted evidence of the notice of disallowance the IRS sent with respect to Ms. Hale's claims for tax year 2014. That notice unambiguously disallowed Ms. Hale's claims and informed her of her right to sue, as well as the limitations period. See Def.'s Mot. Ex. 9, at App. 37–38; Pl.'s Resp. at 48–51. The Court concludes that the two-year statute of limitations provided by § 6532 never began to run with respect to these claims, meaning they are subject to the "outside limit" six-year statute of limitations set forth in 28 U.S.C. § 2401(a).[6] Because the relevant claims for refund were filed starting in 2014 (original tax return for 2013) and her complaint was filed in October 2018, Ms. Hale's complaint is timely with respect to her 2013, 2015, 2016, and 2017 tax refund claims. The Court, therefore, has subject-matter jurisdiction to adjudicate these claims.

## III.    Ms. Hale's Complaint Fails To State a Claim as to Her Remaining Claims

When considering a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court

---

[6] See note 5, supra.

also draws all reasonable inferences in favor of the non-moving party. <u>Sommers Oil Co. v. United States</u>, 241 F.3d 1375, 1378 (Fed. Cir. 2001). So construed, the plaintiff's allegations must "raise [the] right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In other words, the plaintiff's claim must be plausible on its face. <u>Id.</u> at 570; <u>see also</u> <u>Acceptance Ins. Cos., Inc. v. United States</u>, 583 F.3d 849, 853 (Fed. Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

Moreover, in tax refund cases, there is a "presumption of the correctness of the findings of the Commissioner of Internal Revenue." <u>Albemarle Corp. & Subsidiaries v. United States</u>, 118 Fed. Cl. 549, 560 (2014); <u>see also</u> <u>WMI Holdings Corp. v. United States</u>, 891 F.3d 1016, 1021 (Fed. Cir. 2018) ("It is well established that, in a tax refund case, the ruling of the Commissioner of Internal Revenue is presumed correct.") (internal quotations and alteration omitted). The taxpayer must rebut the presumption of correctness by "com[ing] forward with enough evidence to support a finding contrary to the Commissioner's determination." <u>Bubble Room, Inc. v. United States</u>, 159 F.3d 553, 561 (Fed. Cir. 1998). The taxpayer must also "prove the <u>amount</u> of the refund due." <u>WMI Holdings</u>, 891 F.3d at 1021–22 (citing <u>United States v. Janis</u>, 428 U.S. 433, 440 (1976); <u>Bubble Room, Inc.</u>, 159 F.3d at 561).

With these principles in mind, the Court turns to its analysis of Ms. Hale's remaining refund claims for tax years 2013, 2015, 2016, and 2017. The government asserts that these remaining claims should be dismissed because Ms. Hale "fails to state a substantive basis for the claims and cannot overcome the [presumption] of correctness." Def.'s Mot. at 12 (capitalization altered). The Court agrees with the government as to these tax years—and with respect to the 2012 $100 EIC claim—for the reasons discussed below.[7]

## A.    2012 Tax Year: Reduction of Ms. Hale's Claimed Earned Income Credit

The Court finds that Ms. Hale has failed to state a claim upon which relief may be granted with respect to the $100 EIC reduction for the 2012 tax year. Nothing in her complaint or response supplies any basis for the Court to conclude that the IRS was incorrect to reduce her EIC. Ms. Hale's response to the government's motion, insofar as it concerns tax year 2012, is mostly focused on the offset taken from her refund to pay an alleged FEMA debt. Ms. Hale makes no mention of the $100 EIC reduction, unless her reference to "the remaining balance" of her refund, which she alleges the IRS has improperly retained, refers to that sum. <u>See</u> Pl.'s Resp. at 101. In any event, Ms. Hale has not presented sufficient evidence or argument to overcome the presumption of correctness as to this adjustment to her claimed 2012 EIC. She has therefore failed to state a claim upon which relief can be granted and the Court must dismiss this claim with prejudice.

---

[7] The government did not specifically address the $100 EIC claim in its submissions to the Court.

## B.     2013 Tax Year

Ms. Hale's original return for the 2013 tax year claimed an EIC of $3,250.00, a refundable education credit of $1,000.00, and a total refund of $2,844.39. Id. Ex. 4, at App. 11– 12; id. Ex. 5, at App. 15. The IRS reduced the EIC to $3,137.00, disallowed the education credit, and issued a refund of $1,732.00. Id. Ex. 3, at App. 7. Ms. Hale later filed amended returns on April 1, 2015 and July 1, 2015. Id. On September 7, 2015, the IRS abated the entire $1,405.00 it had assessed in tax when Ms. Hale filed her original return. Id. It then issued her an additional refund of $1,462.98, including $57.98 in interest. Id.

Thus, the IRS paid a total of $3,194.98 in refunds and interest to Ms. Hale in connection with the 2013 tax year (first refund of $1,732.00 plus second refund of $1,462.98 including interest). This exceeds Ms. Hale's original requested refund of $2,844.39. Nothing in her complaint contradicts or rebuts the IRS's records of these transactions, and her response to the motion to dismiss further confirms that she received one refund of $1,732.00 and a later refund of $1,405.00 for the 2013 tax year. Pl.'s Resp. at 105. Accordingly, Ms. Hale's complaint fails to state a claim as to the 2013 tax year because she has already received refunds which together exceed the refund she requested in her return for that year.

## C.     2015 Tax Year

Ms. Hale's return for tax year 2015 requested a refund of $3,359.00. Def.'s Mot. Ex. 11, at App. 43. Along with her Form 1040, Ms. Hale filed a Schedule C-EZ and Schedule SE reporting net profit from her business as a daycare provider. Id. at App. 44, 48. The Schedule SE reported total self-employment tax of $1,547.19, although the official IRS return transcript lists the amount as $1,547.12. Id. at App. 48; id. Ex. 12, at App. 54. However, this amount was not transferred to Line 57 of Ms. Hale's Form 1040, as instructed by the Schedule SE. Compare id. Ex. 11, at App. 48 (instructions on Schedule SE) with id. at App. 43 (Form 1040 with amount for Line 57 listed as "0"). Therefore, the IRS reduced Ms. Hale's requested refund of $3,359.00 by the amount of self-employment tax owed ($1,547.12) and issued her a total refund of $1,811.88. Id. Ex. 12, at App. 55.

Ms. Hale's complaint does not allege any facts which contradict the conclusion that the IRS properly deducted from her requested refund the self-employment tax listed on her Schedule SE and omitted from her Form 1040. Her response to the government's motion confirms that she did not include the self-employment tax on her return "because of wanting IRS to calculate" and because Ms. Hale thought that "perhaps [she] would not pay [d]ouble [s]elf-employment [t]ax." Pl.'s Resp. at 106. It appears Ms. Hale may have harbored this belief because the IRS abated her tax and issued an additional refund for the 2013 tax year. Id. In any event, Ms. Hale has not provided any substantive grounds suggesting the IRS's calculations of her tax owed for 2015 were incorrect. Therefore, the complaint fails to state a claim as to this tax year.

## D.     2016 Tax Year

Ms. Hale's 2016 tax return requested a total refund of $4,154.00 based on a claimed $3,154.00 EIC and a $1,000 education credit. Def.'s Mot. Ex. 15, at App. 64. The return also reported net profit for Ms. Hale's business of $9,085.00. Id. at App. 65. In a May 10, 2017 letter,

the IRS stated that, based on the $9,085.00 Ms. Hale reported in profit on her Schedule C-EZ, she could be liable for self-employment tax. Id. Ex. 16, at App. 81. The letter requested that Ms. Hale complete Schedule SE to determine the amount of self-employment tax due or submit an explanation of why she was not liable for self-employment tax, as applicable. Id. On July 24, 2017, the IRS assessed self-employment tax of $1,284.00 and issued a refund of $2,604.30 including $23.30 in interest. Id. Ex. 14, at App. 61. This amount represented an EIC of $2,865.00 (corrected by the IRS from $3,154.00 to $3,069.00, then reduced by $204.00), plus the $1,000 refundable credit, less $1,284.00 in self-employment tax. See id.

As noted above with regard to the 2015 tax year, Ms. Hale has not alleged any facts that bring into question the correctness of the IRS's actions with regard to her return for the 2016 tax year. Based on Ms. Hale's response, her chief complaint as to tax year 2016 appears to be excessive delays of her refund without explanation, along with the failure of various services, including the Tax Advocate Service, to provide her with effective assistance in resolving her tax issues. See Pl.'s Resp. at 102–03. These circumstances, while undoubtedly frustrating, do not controvert the correctness of the IRS's calculations of Ms. Hale's taxes owed and refund due. Therefore, this claim must also be dismissed for failure to state a claim upon which relief can be granted.

### E.   **2017 Tax Year**

Similar to the previous two tax years, Ms. Hale filed a Schedule C-EZ with her 2017 return, reporting $10,050.00 in net profit and, on her Schedule SE, $1,420.02 in self-employment tax. Def.'s Mot. Ex. 19, at App. 95, 97.[8] Ms. Hale again did not list the self-employment tax on her Form 1040, which contributed to her excessively high requested refund of $5,400.00. Id. at App. 93. The IRS assessed $1,419.98 in self-employment tax and found Ms. Hale ineligible for her claimed $2,000 refundable American Opportunity Credit. Id. Ex. 18, at App. 90. She was ineligible for the credit because her return reflected that she (the qualifying student) had not been enrolled "at least half-time for at least one academic period" as required. Id. Ex. 19 at App. 94. Accordingly, the IRS issued a refund of $1,980.02 (EIC of $3,400.00 less $1,419.98 in self-employment tax). Id. Ex. 18, at App. 90.

Ms. Hale's complaint does not allege any facts that contradict the propriety of the IRS's actions with regard to her 2017 tax return. Her response similarly does not provide any grounds disproving the correctness of the IRS's calculations as to her tax due and the refund to which she was entitled. In light of the presumption of correctness and the burden placed on plaintiffs in tax

---

[8] In a September 7, 2018 letter, the IRS asserted to Ms. Hale that she "did not complete [her] Form Schedule SE." Pl.'s Resp. at 244. This conflicts with the document appearing at page 97 of the government's appendix, which appears to be a Schedule SE form showing self-employment tax of $1,420.02 on Line 5 and $710.01 in Line 6 entered for a self-employment tax deduction. Def.'s Mot. Ex. 19, at App. 97. This discrepancy, however, does not affect the Court's ability to conclude that the issued refund was correct because Ms. Hale owed $1,420 in self-employment tax which she did not enter on Line 57 of her Form 1040. Id. at App. 93.

refund cases, this portion of the complaint must also be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons discussed above, the government's motion to dismiss Ms. Hale's complaint is **GRANTED**. Ms. Hale's claims with respect to the $2,119.31 offset to satisfy a purported debt to FEMA, all of her claims for tax year 2014, and any civil rights or tort claims, are **DISMISSED without prejudice**. Her claims with respect to the $100 reduction of her 2012 Earned Income Credit, as well as her refund claims for the 2013, 2015, 2016, and 2017 tax years, are **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge